Good morning, your honors. Dan Arvanites. I lost the... You're not in Billings, are you? I don't have anyone on my monitor. Yeah, I lost her on my monitor, too. There she is. There she is, okay. Yeah, because I looked here, and I looked there, and I saw you. You can probably sit. Thank you, your honors. She was staying off the screen. Oh, no, we need to have you on the screen. Do you have a... We need to have you on a... Do you have a chair there? There you go. Yeah, I want to... A little over more. I want to... Over a little bit to the... Towards the right. A little more. To the right. I want to see your facial expressions while the other side argues. Okay, have a seat. Can you sit there? I will be behind my podium, but that's fine, your honors. I can stay right here. Yeah, well, have a seat then. I think it doesn't work. Oh, it doesn't work? No chair? Let me try. Oh. Okay. You know, this is a... That's about the best I can do. Yeah, this is a screen test, you know. All right. I'm failing? We got you in a corner. Go ahead. Thank you, your honors. May it please the court. Van Arvanites on behalf of Leslie R. Ackerman. I'm with the Federal Defense of Montana and the Great Falls Division. The main issue here is whether a departure of five years on top of the top end of the guideline range, 121, is a reasonable sentence. And this court has, through its prior cases post-Booker, has enabled us to better answer this question. We look at Cantrell, for example, at 433, I believe, 1279, where it says take each factor independently. Don't weigh one factor over the other. We take Manyweather, a departure pre-Booker but ruled on post-Booker. At 447, I believe, 685, rather, that says that the court must specifically address the departure reasons, whether it's up or down. Well, except, okay, now that the guidelines are advisory. Yes. And unfortunately for your client, probably your facts couldn't get a whole lot worse in terms of you've got substantial sexual contact with not sort of, not just a minor, but a very young minor from the ages of 6 to 11 in a position, it's a stepfather, in a position of trust. It's repeated. It's substantial. It's not just a touching. And you also have in the PSR that apparently there's indications that he has molested other children, family members. So you've got, you know, you've got everything from over a long period of time, particularly vulnerable victims, positions of trust, you know. And so you've got danger to society because we're talking about, you know, we're not talking about a 17-year-old girl. We're not talking about someone, you know, that type of situation. We're talking about very young children. It's not, it's under the statutory maximum. So from that standpoint, it's not statutorily illegal. Yes. And, you know, obviously in state courts people are getting, you know, I mean full consecutive sentence over 100 years for these type of things. The guidelines being advisory, wasn't the purpose of the guidelines more along the lines of to deal with statutory rape or situations that were not necessarily your typical pedophile? Well, I think the guidelines were made advisory for. How's that for an opening statement? Well, I'm just saying, you know, that's sort of at the center. You know, convince me, you know, that, you know, if you have one of the, you know, probably if you went to 100 people on the street, everyone would say, well, that's not enough time for what he did. So why is it unreasonable? Well, for several reasons. The government, as well as myself, recommended the low end of the sentence. Here's a man. Exactly. And that's going to be my first question to the government, why they're taking a different position. A 97-month sentence, which is almost double the time that he received. The guidelines have taken into account these type of behaviors. Under 2A3.1, it covers caring custody. It covers age of the victim. It also covers force and threat, which is statutorily under 2241A and B. And Mr. Ackerman did not get enhanced for any force or any threatening behavior. And so the guidelines have taken all of this into account. Here's a person, as both the government and Mr. Ackerman state, who had very little criminal history in the last ten years, very much what we don't usually see in these type of cases, of a pedophile who has been charged and convicted before. You have a man with a substance abuse problem. And what the court did was weigh one factor. They weighed 3553A to uppercase A, seriousness of the offense. Did not address our concerns. Did not address deterrence, public safety. Well, where does it say that one factor? You have to look at all the factors. But where does it say that one can't trump another? Say like you're really sorry, but you're really sorry for, you know, you took early responsibility, you're very sorry. But it's an incredibly serious crime. Why do they have to be given equal weight? Where does the law say that? Well, you mean as far as the 3553A factors? Right. Well, Cantrell, United States v. Cantrell, states that they have to be given equal weight. United States v. Mix says you have to differentiate between the guideline factors as well as the 3553A factors. And so, and of course we have many weather to guide us. They have to be given equal weight or equal consideration? They have to be given equal consideration. Well, equal consideration and equal weight are not the same thing. Well, you have United States v. Zavala, which whether you want to interpret this or not differently, says that you must first start with the guidelines. Whether you can infer that as weighing guidelines a little more or not, that's up to the court's inference. But the guidelines really take into account these factors. The government could have charged multiple factors for each and every incident. It did not. We took responsibility for this. We pled to this case. And therefore, we believe that the reasonable sentence would have been within the guideline. We would submit the low end of the guideline. Counsel, the trial judge did not make any reference in the sentencing to his abuse of other children. Is that significant? I think that is significant against my position, unfortunately. I have to concede that. The case that came down Friday, United States v. Mohammad, talks about criminal history and the fact that there are uncharged conduct in his criminal history that were not reflected. So, therefore, it was perhaps under-evaluated in a way. In this sense, of course, we have a criminal history of I. We have, you know, the fact that there are some statements that he did molest when he was maybe 20 years before. But in the last 10 years, there's been clearly a paucity of criminal history for this young man. I think some traffic were the only convictions in traffic cases, and that's about it. It's a big problem, isn't it? Yes. In Montana, this type of conduct. Well, we have a lot of substance abuse issues on the reservation. You have a lot of child molestation going on. Yes. The cases we have, it's all in there. You know, it's a very heinous crime, especially one that goes on for years and years. I don't even know the fact that maybe it happened once. That isn't enough for this kind of punishment. So, you know. And if I may just address that for briefly, these are heinous acts. Even if it happens once, it's a heinous act. And because of that, the guidelines, again, take that into consideration. They even amended the guidelines on November of 2004 to make it a base level 30 instead of a 27, to encompass that. But Mr. Ackerman did not, was not enhanced for force or threat. Well, the difficult part for him, too, is if he had been sentenced two days before Booker as opposed to, what, one day after. That is correct. Yes. He would have gotten 97 months probably. Or, you know, I mean, he would have. He would have gotten within the range. Sure. Sure. Probably at the high end. Perhaps middle. But, you know, the interesting thing is if you look at the Mohammed case. But even then, the judge can go above the guideline. That's true. But there are certain departure factors, of course, before Booker that they would have had to follow. Anyway, you want to save some time for a vote. I just briefly want to mention Mohammed because I think there's something interesting in that. 6A, 2A, 6.1, note 3A discusses the fact that the guidelines themselves may be powerless in certain offenses under calling in bomb threats, which is what Mohammed was guilty of. Interestingly enough, 2A, 3.1, the rape statute, the sexual assault statute, does not have this provision in the commentary. The only provision it has is under Commentary Note 6, which talks about if there are multiple perps to one victim. It does not go into multiple acts. And so I, again, go back to the guidelines and say the guidelines have taken this into consideration. The commission has taken this into consideration. Thank you, Your Honors. I'll reserve the rest of my time. Thank you. Good morning, Your Honors. My name is Lori Sook. I'm an assistant United States attorney from Montana. The question that I will address before the court asks it is, yes, the government did recommend a low-end guideline sentence of 97 months. That's not the question on appeal, though. The question on appeal is whether the district court erred in rejecting that recommendation. Well, we want to know why the government recommended that low sentence, considering the guidelines. I mean, let's be real about this. It was most important to the government that the victim not have to testify at a trial and be further victimized. And so for purposes of pleading a case and giving a low-end guideline recommendation, that, in the view of the government, was the greater good, rather than re-victimizing this victim and having her come to trial and have to testify simply because the defendant did not get a low-end recommendation from the government. That was the reasoning of the government. Well, was that part of his plea negotiation, that you would recommend the low end? Yes, it was. Okay. It was in the plea agreement. We comported with the plea agreement provision by recommending the low end of the guideline range. Okay. Now we understand. Here, the issue on appeal is whether the district court erred. Booker was clearly in its infancy at this point. It was the morning after the decision. But the district court understood its obligations even the day after and comported with all of the case law that has since been handed down by this court. The court looked to the advisory guideline range and considered it, considered the statutory maximum and considered the 3553A factored. The court told, put on the record the reasons for why it was rejecting the advisory guideline range and sentencing the defendant to 180 months. And it wasn't simply one reason. It was many. The nature of the offense, the danger that this individual posed to the public, and the need to protect the public from this individual, as well as deterring thief to criminal conduct. So the court did exactly what it is supposed to do post Booker. And no matter what case you look at that has been decided since, the court didn't err. And in the view of the United States, in this court reviewing that sentence for reasonableness, the district court did what it is supposed to do. And we would ask the court to affirm the sentence. All right. Thank you. Any referral? Just briefly. In Montana, in Indian country, there are a lot of jury trials. And so this was one of the reasons why we were able, in part, to negotiate a low-end recommendation. But that still doesn't take away from the fact that, you know, in the government's own words, that they believe that the reasonable sentence was 97 months based upon the factors of 3553A. Thank you. All right. Fine. Matter stands submitted.
judges: Reavley, Pregerson, Callahan